UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

BRADLEY OMAR JOHNSON,            )
                                )
            Petitioner,          )
                                )
    v.                           )        Case No. 1:24-cv-00028-SRC
                                )
UNITED STATES OF AMERICA,        )
                                )
            Respondent.          )

**Memorandum and Order**

Bradley Omar Johnson asks the Court to amend his sentence under 28 U.S.C. § 2255.  He makes three arguments:  that he suffered from constitutionally ineffective assistance of counsel during his plea negotiation and sentencing, that he suffered from constitutionally ineffective assistance of counsel on direct appeal, and that the Court imposed a disparate sentence.  Having carefully reviewed the record, the Court holds that Johnson has not demonstrated entitlement to relief or an evidentiary hearing under section 2255, and the Court accordingly denies his motion.

**I.    Background**

**A.    Factual background**

Johnson's guilty-plea agreement describes the following facts:

In September of 2018, investigators were conducting an investigation into the drug trafficking activities of Korey Johnson and his associates.

On October 30, 2018, an informant, (CS-3) met with . . . Johnson for the purposes of buying some methamphetamine . . . Johnson initially declined, but then called CS-3 and agreed to meet in Hayti, Missouri.  CS-3 arrived at the meeting place and met with Tommy West III, who was driving . . . Johnson's car.  West delivered 13.9 grams of a mixture or substance containing methamphetamine to CS-3.

[On] December 19, 2018, a confidential informant contacted . . . Johnson to buy some methamphetamine.  Jaamil Owens drove . . . Johnson to the meeting place in Hayti,

Missouri, where . . . Johnson sold the CI 12.42 grams of a mixture or substance containing methamphetamine.

On December 20, 2018, an informant reported that they had observed . . . Johnson and Jaamil Owens selling methamphetamine at a residence on Sycamore [S]treet in Hayti.

On March 20, 2019, . . . Johnson sold an informant two ounces of methamphetamine for $750 and told the CI that the price would be cheaper if the CI bought more frequently.

[Johnson] admits to knowingly, voluntarily[,] and intentionally distributing 50 grams or more of a mixture or substance containing methamphetamine. [Johnson] agrees that the events set out in the factual basis above constitute[] proof that [Johnson] distributed methamphetamine in violation of Title 21, U.S.C. §[] 841(a)(1).

Guilty Plea Agreement at 2–3, *United States v. Johnson*, No. 1:19-cr-00100-SRC-2 (E.D. Mo. May 5, 2021), doc. 320 (emphases omitted) ("Crim. doc.") (The Court cites to page numbers as assigned by CM/ECF).

## B.    Procedural background

### 1.    Criminal proceedings

In May 2019, a federal grand jury charged Johnson with three violations of section 841(a)(1): conspiracy to distribute at least 500 grams of a mixture or substance containing methamphetamine (Count I), distributing methamphetamine on or about December 19, 2018 (Count V), and distributing at least 50 grams of a mixture or substance containing methamphetamine on March 20, 2019 (Count VI). Crim. doc. 1. A year after the indictment, Johnson waived his right to file pretrial motions, crim. doc. 175, and the Court set a change-of-plea hearing, crim. doc. 232. But the day before the hearing was supposed to take place, Johnson's counsel, citing Johnson's abrupt request for a change of counsel, filed a motion for leave to withdraw from the representation. *See* crim. doc. 239. Judge Abbie Crites-Leoni, United States Magistrate Judge, granted the motion and appointed Jacob Zimmerman as

Johnson's counsel of record.  Crim. doc. 245.  The Court continued the change-of-plea hearing.

Crim. doc. 240.

Through Zimmerman, his new counsel, Johnson reasserted his waiver of the right to file

pretrial motions.  Crim. doc. 275.  Once more, the Court set a change-of-plea hearing.  Crim.

doc. 316.  This time, the hearing went forward.  Before the hearing, Johnson and the United

States reached a plea agreement that provided the following.  Johnson agreed to plead guilty to

Count VI in exchange for the dismissal of Counts I and V.  Crim. doc. 320 at 1–2.  He admitted

to knowingly violating section 841(a)(1), admitted that there was a factual basis for his plea as to

Count VI, and confirmed that he fully understood the elements of his crime—namely:  (1) that he

intentionally distributed methamphetamine to another person, and (2) that at the time of the

distribution, he knew that it was methamphetamine.  *See* crim. doc. 320 at 2.

Johnson also agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing

issues, including, but not limited to, any issues relating to pretrial motions, discovery and the

guilty plea, the constitutionality of the statute[] to which [he] [pleaded] guilty[,] and whether

[his] conduct [fell] within the scope of the statute[]."  *Id.* at 5–6; *see* crim. doc. 345, Plea Hr'g

Tr. at 30:6–30:10.  Further, he agreed to "waive all rights to contest the conviction or sentence in

any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section

2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."  Crim.

doc. 320 at 6; *see* crim. doc. 345, Plea Hr'g Tr. at 30:15–30:20.  He also acknowledged that

"there [would] be no right to withdraw the plea entered under th[e] agreement, except where the

Court reject[ed] the plea agreement under Rule 11(c)(5), or if [Johnson] [could] show a fair and

just reason."  Crim. doc. 320 at 10.  The plea agreement stated that the parties "agree[d] that the

base offense level, including relevant conduct, [was] 34."  *Id.* at 4.  That level corresponded to

3

conduct that involved at least five kilograms, but less than 15 kilograms, of methamphetamine.
*See* U.S. Sent'g Guidelines Manual § 2D1.1(c)(3) (U.S. Sent'g Comm'n 2018).

In May 2021, the Court held a plea hearing at which Johnson pleaded guilty to distributing at least 50 grams of a mixture or substance containing methamphetamine. Crim. doc. 319; crim. doc. 345, Plea Hr'g Tr. at 40:9–41:10. Johnson confirmed that he understood the elements of his crime and that he did, in fact, do everything set forth in those elements:

|   |   |
|---|---|
| THE COURT: | So [s]ection 3 of the plea agreement sets forth the elements of the offense you've been charged with. And the elements are those things that the United States must prove at trial before you could be convicted or found guilty of the offense charged. Do you understand that? |
| [JOHNSON]: | Yes, I do |
| THE COURT: | So the elements are as follows: |
|   | One, you intentionally distributed methamphetamine to another; and, two, at the time of the distribution, you knew it was methamphetamine. And then beyond that, to invoke the penalty sanctions under a law known as 21, United States Code, [s]ection 841(b)(1)(B)(viii), the United States must prove beyond a reasonable doubt that the amount of mixture or substance containing methamphetamine involved in the offense was 50 grams or more. |
|   | Do you understand all of that? |
| [JOHNSON]: | Yes. |
| THE COURT: | Okay. And did you, in fact, do all of those things? |
| [JOHNSON]: | Hold on. What do you mean "do all of those things?" As far as prove beyond a reasonable doubt that the mixture involved in the offense was 50 grams or more? |
| THE COURT: | Well, let's focus on two things first; that you intentionally distributed methamphetamine to another and that at the time of the distribution you knew it was methamphetamine. |
| [JOHNSON]: | Yes, sir. |

4

| | |
|---|---|
| **THE COURT:** | And you are agreeing that it was in excess of 50 grams of methamphetamine; correct? |
| **[JOHNSON]:** | Well, sir, to be honest with you – yes.  Yes.  Yes, I am just going to go with it.  Yes. |
| | . . . . |
| **THE COURT:** | Before I ask you how you wish to plead, do you need to speak with your attorney or would you like to speak with him? |
| **[JOHNSON]:** | No, sir. |
| **THE COURT:** | Mr. Johnson, how do you wish to plead to the charges in Count 1 of the indictment in this case? |
| **[JOHNSON]:** | I will plead guilty, sir. |
| **THE COURT:** | I'm sorry.  I misspoke. |
| | . . . . |
| | So just for the record and for the sake of clarity, you are only pleading guilty to the charges in Count [VI] of the indictment in this case; right? |
| **[JOHNSON]:** | Correct. |

*Id.* at 20:17–21:22, 40:5–40:12, 40:15–40:18.  The Court confirmed the plea and found that

Johnson was competent to plead guilty:

| | |
|---|---|
| **THE COURT:** | All right.  So with that, have you understood all of the questions that I've asked you here today? |
| **[JOHNSON]:** | Yes, I have, sir. |
| **THE COURT:** | Have you answered them truthfully and completely? |
| **[JOHNSON]:** | Most – yes, sir, I have. |
| | . . . |
| **THE COURT:** | Are you pleading guilty because you are, in fact, guilty as charged? |

| | |
|---|---|
| **[JOHNSON]:** | Yes, sir, I am. |
| **THE COURT:** | The Court finds that in the case of the United States of America v. Bradley Omar Johnson, that Mr. Johnson is fully competent and capable of entering an informed plea; that he is aware of the nature of the charges and the consequences of his plea; that his plea of guilty is a knowing and voluntary plea made willingly and intelligently.  It is supported by an independent factual basis containing each of the essential elements of the offense charged. |
| | I do accept your plea of guilty[,] and I find you guilty as charged, Mr. Johnson. |

*Id.* at 40:19–40:25, 41:8–41:20.  Further, the Court discussed with Johnson the services that

Zimmerman and Johnson's previous attorney had rendered.  Johnson confirmed that Zimmerman

resolved all the issues that Johnson had had with his previous attorney:

| | |
|---|---|
| **THE COURT:** | Mr. Johnson, about how long have you known Mr. Zimmerman? |
| **[JOHNSON]:** | Eight months.  Six to eight months maybe. |
| **THE COURT:** | Have any other attorneys assisted you in any way in connection with this case? |
| **[JOHNSON]:** | Yes.  Jason Korner. |
| **THE COURT:** | And at one point did Mr. Zimmerman take over representation from Mr. Korner?  Is that right? |
| **[JOHNSON]:** | Yes, sir. |
| **THE COURT:** | So did you have some issues with respect to Mr. Korner? |
| **[JOHNSON]:** | Yes, sir.  There wasn't any – there wasn't great representation at all as far as communication.  There seemed to be no fight with him at all. . . . |
| **THE COURT:** | All right.  So since Mr. Zimmerman has been your attorney, has that resolved and taken care of all the issues you had with Mr. Korner? |
| **[JOHNSON]:** | Yes. |

*Id.* at 9:15–10:6, 10:11–10:14.

Amid this conversation about his attorneys, Johnson asked the Court why the plea agreement, in which the parties had agreed to a base offense level of 34, *see* crim. doc. 320 at 4, did not contain an offense level of 24, *see* crim. doc. 345, Plea Hr'g Tr. at 10:20–11:17.  The Court offered a high-level explanation of the role of relevant conduct in calculating the total offense level.  *See id.* at 11:18–12:9.  Johnson asked another clarifying question about the role of relevant conduct.  *See id.* at 12:10–12:19.  This time, the Court instructed Johnson to discuss the issue in private with his attorney.  *See id.* at 12:20–12:25.  But before the Court could finish its instruction, Johnson interjected and told the Court that he was "willing to proceed with everything" and that the relevant-conduct question was "not a real big issue or anything."  *Id.* at 13:1–13:3.  After another colloquy between Johnson, his attorney, and the Court about the same issue, the Court once again offered Johnson a chance to speak privately with his attorney before moving forward with the plea.  *Id.* at 14:11–14:16.  Johnson declined and then confirmed that he was fully satisfied with Zimmerman's services:

| | |
|---|---|
| **THE COURT:** | All right. |
| | So what I will do is, Mr. Johnson, if you want to talk with your attorney now privately, we can do that.  If you want to wait until we get through a few more pieces of this hearing, you can do it then.  So I will let you choose which of those you want to do. |
| **[JOHNSON]:** | Well, I'm actually fine.  We can proceed. |
| **THE COURT:** | Very good. |
| | So with that – so this [relevant-conduct] question aside, which we will get resolved for you before the hearing is over, do you have any complaints against Mr. Zimmerman? |
| **[JOHNSON]:** | No.  Actually, I'm satisfied with Jacob. |

> THE COURT:       All right.  So you are fully satisfied with the services that Mr.
>                  Zimmerman has performed for you in this case?
>
> [JOHNSON]:       Yes, I am.

*Id.* at 14:11–15:3.  Then, Johnson confirmed that he understood the consequences of a guilty plea

and had discussed them with Zimmerman:

> THE COURT:       I am going to talk with you about waiver of pretrial motions and
>                  waiver of trial rights.
>
>                  First, do you understand by pleading guilty you are waiving the
>                  right to file pretrial motions, including motions to suppress any
>                  evidence or any statements that you may have made?
>
> [JOHNSON]:       Yes.
>
> THE COURT:       And did you discuss that decision with Mr. Zimmerman?
>
> [JOHNSON]:       Yes.
>
> THE COURT:       And are you fully satisfied with the decision that you and Mr.
>                  Zimmerman made about waiving pretrial motions?
>
> [JOHNSON]:       Yes.
>
>                  . . . .
>
> THE COURT:       Mr. Johnson, did you have the opportunity to review the plea
>                  agreement or the entire document before you signed it?
>
> [JOHNSON]:       Yes, sir.
>
> THE COURT:       And did you have . . . that opportunity before today?
>
> [JOHNSON]:       Yes, sir.
>
> THE COURT:       Did you have the opportunity to go through the plea agreement in
>                  its entirety with Mr. Zimmerman and have him answer any and all
>                  questions you had about it before you signed it?
>
> [JOHNSON]:       Yes, sir.

*Id.* at 15:4–15:17, 18:8–18:20.  Finally, as promised, the Court discussed the relevant-conduct

issue with Johnson, and Johnson admitted to the relevant conduct described in the plea

agreement:

| | |
|---|---|
| **THE COURT:** | So [s]ection 4 of the plea agreement sets forth the facts that you, your attorney[,] and the United States have all agreed are true and correct.  So I take it that you have gone through the facts in [s]ection 4[,] and you've gone through them in detail with your attorney[,] and you understand all of those facts.  Is that right? |
| **[JOHNSON]:** | Correct. |
| **THE COURT:** | And that here is where this relevant conduct comes in.  These facts, once they are admitted[,] . . . become what's called "relevant conduct."  And relevant conduct, as I mentioned earlier, is conduct that I can and will take into account in determining your sentence. |
| | Do you understand that? |
| **[JOHNSON]:** | Yes, sir. |
| **THE COURT:** | So you understand that one of the facts you are agreeing to . . . [is] knowingly, voluntarily[,] and intentionally distributing 50 grams or more of a mixture or substance containing methamphetamine. |
| | Do you understand you are agreeing to and admitting that? |
| **[JOHNSON]:** | Yes, sir, I am. |

*Id.* at 22:23–23:2.

    After the guilty plea, the United States Probation Office prepared a Presentence

Investigation Report.  Crim. doc. 326.  The PSR calculated Johnson's total offense level as 31

and his total criminal history category as IV.  *Id.* at ¶¶ 41, 64.  The Probation Office started with

a base offense level of 34, the same level to which the parties had agreed in the plea agreement.

*See id.* at ¶ 32; crim. doc. 320 at 4.  The Probation Office reached the base offense level through

the sentencing guidelines, which "provide[] that an offense involving at least five kilograms of

methamphetamine has a base offense level of 34."  Crim. doc. 326 at ¶ 32 (citing U.S. Sent'g

Guidelines Manual § 2D1.1(c)(3) (U.S. Sent'g Comm'n 2018)). This guideline applied because, according to the Probation Office, "[t]he parties agreed that the quantity of mixture or substance containing methamphetamine for which . . . Johnson [was] accountable, including relevant conduct, [was] at least five kilograms." *Id.* at ¶ 25 (emphasis omitted). To arrive at the total offense level of 31, the Probation Office reduced the base offense level of 34 by three points for acceptance of responsibility. *Id.* at ¶¶ 32, 39–41. Based upon the total offense level and criminal-history categorization, the advisory-guidelines imprisonment range was 151 months to 188 months. *Id.* at ¶ 91.

Two months after the plea hearing, Johnson filed a pro se motion for an evidentiary hearing. Crim. doc. 324. Citing a discrepancy between two reports from the Missouri State Highway Patrol regarding the amount of methamphetamine sold during one of the incidents for which charges against Johnson had been dismissed in accordance with the plea agreement, Johnson contended that the evidence against him was tainted. *Id.* The Court denied the motion, subject to refiling through counsel. Crim. doc. 325. Instead of refiling the motion through counsel, Johnson filed another pro se motion—this time seeking to replace his counsel altogether. Crim. doc. 334 at 1. Johnson alleged that the PSR "agreed to things" of which Zimmerman had not informed him. *Id.* At bottom, Johnson explained, he was "not satisfied" with Zimmerman's assistance. *Id.*

Just one week after moving for new counsel, Johnson, through his counsel, filed a motion to withdraw his guilty plea in light of the discrepancy between the two Highway Patrol reports. Crim. doc. 336. Johnson conceded that the discrepancy "would not affect the guideline determination." *Id.* at ¶ 4. Nevertheless, he believed that the discrepancy "cast doubt on all of the amounts of drugs police determined were subject to this conspiracy." *Id.*

10

To resolve these issues, the Court held a status conference just over a week after Johnson filed his motion to withdraw the guilty plea. Crim. doc. 338. The Court first asked Johnson to relate the grounds for his motion for new counsel. Crim. doc. 359, Status Conf. Tr. at 6:24–7:9. Johnson first complained about Zimmerman's failure to address the discrepancy between the two Highway Patrol reports but, in the next breath, conceded that Zimmerman was "now . . . addressing the issue." *Id.* at 8:12–9:2. Johnson then explained that the two-and-a-half-year length of the criminal proceedings made him "feel like [his] constitutional rights [were] violated." *Id.* at 9:5–9:12. The Court held that these facts did not establish a basis for appointment of new counsel and accordingly denied Johnson's pro se motion for new counsel. *Id.* at 9:13–10:7.

Then, the Court turned to Johnson's motion to withdraw his guilty plea. *Id.* at 10:8–10:9. Through his counsel, Johnson once again conceded that the discrepancy between the two Highway Patrol reports "would not affect" the sentencing-guideline determination. *Id.* at 11:23–12:2. But, he argued, the discrepancy betrayed "serious concerns . . . about the other amounts and chain of custody issues that would have been involved when all these drug sales occurred during this conspiracy." *Id.* at 12:2–12:7. After conceding, yet again, that the discrepancy "would have no effect on the guidelines whatsoever," *id.* at 15:3–15:7, Johnson admitted that he sought not only to withdraw his guilty plea but also to set aside his previous waivers of the right to file pretrial motions, *id.* at 17:23–18:4. After rehashing the relevant discussions from the plea hearing, the Court held that Johnson had "not shown a fair and just reason for withdrawing his plea" and accordingly denied his motion. *Id.* at 29:10–30:1.

Before sentencing, Johnson, through his counsel, filed a sentencing memorandum. Crim. doc. 344. There, Johnson argued that the Court should reduce his sentence from the presumed

guideline range of 151–188 months to a sentence of 87 months for four reasons. *Id.* at 1. First, while Johnson did not contest the PSR's findings regarding his criminal history, he argued that his criminal history was "overstated." *Id.* at 1–2. Second, Johnson argued that his offense level should have been two levels lower because he was merely a "minor participant" in the conspiracy. *Id.* at 3–4. Third, Johnson argued for a reduction so that his sentence would not substantially exceed those of two of his codefendants, who received sentences of 87 and 90 months each. *Id.* at 4–5. Fourth, Johnson asked for a further reduction based on acceptance of responsibility. *Id.* at 5–6. Johnson admitted that his motion to withdraw from the plea agreement was "imprudent[]" and conceded, yet again, that the lab-report discrepancy "ha[d] no effect on the overall relevant conduct/drug amounts." *Id.* at 5. But, Johnson argued, the motion to withdraw from the plea agreement should not have affected his acceptance-of-responsibility determination because "his concerns about the lab results were legitimate." *Id.*

In October 2021, the Court held a sentencing hearing. Crim. doc. 348. The Court asked Johnson whether he had any objections with respect to the PSR. Crim. doc. 357, Sent. Tr. at 5:1–5:2. Johnson, through his counsel, renewed his request to withdraw from the "portion of the plea agreement revolving around the relevant conduct," which he conceded that the Court had "already overruled." *Id.* at 5:3–5:21. Other than that, Johnson said that he had no further objections to the PSR. *Id.* The Court proceeded to adopt the PSR as its "findings of fact and conclusions of law regarding the advisory guidelines." *Id.* at 16:22–16:24. It then addressed, and rejected, each proposed reduction that Johnson had offered in his sentencing memorandum. *See id.* at 17:11–23:11. Finally, the Court sentenced Johnson to a within-the-guidelines-range sentence of 180 months of imprisonment followed by a four-year term of supervised release. *Id.* at 25:12–26:6.

Before the Court imposed its sentence, Johnson reaffirmed his guilt and his satisfaction with the services rendered him by defense counsel:

| | |
|---|---|
| **THE COURT:** | And you pled guilty because you are, in fact, guilty as charged; right? |
| **[JOHNSON]:** | Yes, sir. |
| **THE COURT:** | All right.  When you pled guilty, you told me you were satisfied with Mr. Zimmerman's services, and I know we've had some issues between now and then with respect to your position in this case, but have you had enough time to consult with Mr. Zimmerman regarding any and all issues you have in this case? |
| **[JOHNSON]:** | Yes, sir, I have. |
| **THE COURT:** | All right.  And has he answered any and all questions you had about this case? |
| **[JOHNSON]:** | Yes, sir. |
| **THE COURT:** | Are you fully satisfied with the representation of Mr. Zimmerman as provided to you in this case? |
| **[JOHNSON]:** | Yes, sir. |

*Id.* at 3:5–3:21.

Johnson appealed, arguing that the Court abused its discretion in denying his motion to withdraw his guilty plea and in imposing the sentence that it imposed.  *See* crim. doc. 366 at 2. The Eighth Circuit affirmed.  *Id.* at 3.  Johnson also raised an ineffective-assistance-of-counsel claim, arguing that his trial counsel should have noticed the lab-report discrepancy.  *Id.*  But the Eighth Circuit rejected that claim, too.  *Id.*  Johnson is currently serving his sentence at Forrest City Low FCI in Arkansas with a projected release date of May 30, 2032.  *Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 22, 2025).

### 2.    Civil proceedings

In February 2024, Johnson timely filed a motion to vacate his sentence pursuant to section 2255.  Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, No. 1:24-cv-00028-SRC, *Johnson v. United States* (E.D. Mo. Feb. 15, 2024), doc. 1 ("Civ. doc.").  He argues that his defense counsel was constitutionally ineffective in two ways:  first, because defense counsel failed to object to the base offense level of 34 in the plea agreement and at sentencing, and second, because defense counsel failed to raise the same issue on direct appeal.  *See id.* at 14–16.  Johnson also argues that the Court should grant his petition because the Court imposed an "unduly harsh" and "disparate" sentence. *Id.* at 16.

The United States timely filed its response, civ. doc. 9, and Johnson timely filed his reply, civ. doc. 10, rendering Johnson's Motion to Vacate, civ. doc. 1, ripe for the Court's review.  In the meantime, Johnson filed a Motion for an Evidentiary Hearing and a Motion for Appointment of Counsel.  *See* civ. doc. 11.  The Court resolves all pending motions here.

## II.    Standard

### A.    Section 2255

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a

complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments). Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal. *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018). If a petitioner failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief. *See id.*

Three exceptions to this general rule exist. First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002). Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice. *See Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992). This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims that could have been but were not raised on direct appeal." *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)). Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental miscarriage of justice." *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)). This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir.

1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

## B.   Ineffective assistance of counsel

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a § 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception to the procedural-default rule exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both trial and appellate proceedings, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To establish ineffective assistance of counsel, a petitioner "faces a heavy burden." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). He must show both that his counsel's performance was

deficient and that the deficient performance prejudiced the petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001). An attorney's performance is deficient only if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *see also Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, "a 'strong presumption'" exists "that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

## III. Discussion

Johnson's § 2255 petition makes three distinct arguments. *See* civ. doc. 1. The Court addresses each in turn.

### A. Ineffective assistance of counsel at plea negotiation and sentencing.

Johnson argues that his counsel performed deficiently by "failing to object to the incorrect base offense level of 34" in the plea agreement and at sentencing. Civ. doc. 1 at 14. Johnson implies that counsel was deficient at both the plea-negotiation and the sentencing stages of his criminal case. *Id.* at 14–15. The Court turns to each.

#### 1. Plea negotiation

Johnson argues that his counsel was defective because counsel agreed to a base offense level of 34 in the plea agreement. *Id.* at 14–15. The Court disagrees.

To satisfy *Strickland*'s prejudice element in the context of plea negotiation, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Here, the record shows precisely the opposite. Johnson knew that the plea agreement stipulated to a base offense level of 34, as evidenced by the fact that he personally asked the Court for "a clarification of why it's so high" at the plea hearing. Crim. doc. 345, Plea Hr'g Tr. at 11:12–11:17. And just moments after confirming this awareness of the base offense level, Johnson, rather than "insist[ing] on going to trial," *Covington*, 739 F.3d at 1090 (quoting *Hill*, 474 U.S. at 59), insisted that he was "willing to proceed" with his guilty plea, crim. doc. 345, Plea Hr'g Tr. at 13:1–13:3. Thus, even assuming that Johnson's counsel was deficient for agreeing to stipulate to a base offense level of 34 in the plea agreement, the record "affirmatively refutes" any argument that this deficiency induced Johnson's guilty plea. *Shaw*, 24 F.3d at 1043 (citing *Larson*, 905 F.2d at 220–21). This suffices to refute Johnson's ineffective-assistance-of-counsel claim with respect to plea negotiations. *See Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) ("The *Strickland* test has two parts: whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test.").

### 2.    Sentencing

Johnson contends that his counsel should have objected to the total offense level during the sentencing phase and that this failure amounted to ineffective assistance of counsel. Civ. doc. 1 at 14–15. Specifically, Johnson argues that, in determining his sentence, the Court was not free to consider anything except the conduct for which he pleaded guilty. *Id.* at 15. This would render the offense level of 34 erroneous, Johnson contends, and thus his counsel should have objected to it on these grounds. *Id.* Once again, the Court disagrees.

18

Johnson's argument relies on an incorrect theory of the law—that the Court may consider only those facts essential to a defendant's conviction at sentencing. But "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *United States v. Sleet*, 893 F.2d 947, 949 (8th Cir. 1990) (citation omitted); U.S. Sent'g Guidelines Manual § 1B1.3 cmt. n.9 (U.S. Sent'g Comm'n 2018); *see also United States v. Karam*, 37 F.3d 1280, 1285 (8th Cir. 1994) (holding that "a sentencing court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts"); *United States v. Hogue*, 66 F.4th 756, 765 (8th Cir. 2023) (holding that the Court may consider "charged, uncharged, dismissed, and acquitted conduct as relevant conduct" if the district court's factual findings are "supported by a preponderance of the evidence" (quoting *United States v. Thomas*, 760 F.3d 879, 889 (8th Cir. 2014))).

Here, Johnson pleaded guilty to just one sale of drugs, which took place "[o]n or about March 20, 2019." Crim. doc. 1 at 3; crim. doc. 320. But the Court found that Johnson was part of a broader conspiracy to distribute at least five kilograms of methamphetamine between September 2018 through March 2019, when the sale of conviction took place. Crim. doc. 326 at ¶ 25; crim. doc. 357, Sent. Tr. at 16:22–16:24 (adopting the PSR as the Court's "findings of facts and conclusions of law"). The March 20, 2019, sale and the monthslong conspiracy were plainly "part of a common scheme or plan," so the Court properly considered the monthslong conspiracy in determining Johnson's sentence. U.S. Sent'g Guidelines Manual § 1B1.3 cmt. n.9 (U.S. Snt'g Comm'n 2018).

Johnson contends that the Court erred in its relevant-conduct analysis because the plea agreement stipulated only that Johnson was responsible for 56 grams of methamphetamine, not

five kilograms. *See* civ. doc. 10 at 3. But the Court isn't confined to the statement of facts in the plea agreement for its relevant-conduct findings because the statement of facts "in no way purports to limit the scope of relevant conduct" that the Court could find. *United States v. Noriega*, 760 F.3d 908, 911 (8th Cir. 2014); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Instead, the statement of facts merely lays out facts that the prosecution could prove beyond a reasonable doubt at trial. Crim. doc. 320 at 2–3.

Thus, Johnson's theory depends on the premise that his counsel was ineffective because counsel failed to raise an argument that was doomed to fail. With this flawed premise, Johnson cannot satisfy the first element of an ineffective-assistance-of-counsel claim: that his counsel was constitutionally deficient. *See United States v. Hart*, 557 F.2d 162, 163 (8th Cir. 1977) (per curiam) (holding that a criminal defendant "was not denied effective assistance of counsel" just because counsel failed to file motions that "were frivolous beyond any reasonable doubt"). And even if Johnson could make such a showing, he can't show that "the result of the proceeding would have been different" had his counsel objected to the base offense level on these grounds. *Strickland*, 466 U.S. at 694. Indeed, the Court stated, multiple times at the plea hearing alone, that it could and would consider relevant conduct when it determined Johnson's sentence. *See, e.g.*, crim. doc. 345, Plea Hr'g Tr. at 22:8–22:12, 28:7–28:13. There is no "reasonable probability" that the Court would have reduced Johnson's total offense level had his counsel argued that the use of relevant conduct at sentencing was illegitimate. *Strickland*, 466 U.S. at 694. Johnson's ineffective-assistance-of-counsel claim thus must fail. *See id.*

### B. Ineffective assistance of counsel on direct appeal

Johnson argues that his appellate counsel was constitutionally ineffective because counsel failed to make the same arguments that trial counsel failed to make regarding the total offense level. Civ. doc. 1 at 15–16. The Court disagrees. Johnson's argument—that the Court was not free to consider conduct not essential to the offense of conviction at sentencing—would have been just as frivolous on appeal as it would have been at the sentencing hearing. *See supra* Section IV.A.2. Thus, Johnson's counsel was not defective for choosing not to raise it. *See id.*

What's more, to establish the prejudice element for an ineffective-assistance-of-appellate-counsel claim, Johnson must show that his "appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." *Zinzer v. Iowa*, 60 F.3d 1296, 1299 (8th Cir. 1995) (citation omitted). Because Johnson's argument, which relies on an erroneous legal theory, "was unlikely to succeed on direct appeal, appellate counsel did not prejudice [him] by failing to raise the claim." *Id.* Thus, Johnson cannot establish ineffective assistance of appellate counsel.

### C. Allegedly disparate sentence

Finally, Johnson argues that the Court imposed a disparate and unduly harsh sentence. Civ. doc. 1 at 16. Johnson does not label this claim as an ineffective-assistance-of-counsel claim, *id.*, but he does argue that his "[c]ounsel should have argued for a departure" from the advisory guidelines range and that this failure prejudiced him. *Id.*

To the extent that Johnson seeks to challenge his sentence without making an ineffective-assistance-of-counsel claim, the challenge must fail for at least two reasons. First, Johnson agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for

claims of prosecutorial misconduct or ineffective assistance of counsel."   Crim. doc. 320 at 6; crim. doc. 345, Plea Hr'g Tr. at 30:15–30:20.   Thus, Johnson waived the right to challenge his sentence in this way.   Second, Johnson already challenged the substantive unreasonableness of his sentence on direct appeal, and the Eighth Circuit rejected the challenge.   Crim. doc. 366 at 3. Having lost on appeal, Johnson cannot now relitigate the same claims under section 2255.   *See Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) ("It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)).

To the extent Johnson raises an ineffective-assistance-of-counsel claim for counsel's failure to ask the Court to depart from the sentencing guidelines, "the record affirmatively refutes the factual assertion[] upon which [Johnson's claim] is based."   *Shaw*, 24 F.3d at 1043 (citing *Larson*, 905 F.2d at 220–21).   Indeed, Johnson's counsel filed a sentencing memorandum in which he explicitly argued that the Court should depart from the "presumed guideline range of 151–188 months" and impose a sentence of 87 months instead.   Crim. doc. 344 at 1.   The fact that the Court addressed and denied this request at the sentencing hearing, crim. doc. 357, Sent. Tr. at 17:11–23:11, proves that "the result of the proceeding would [not] have been different" had counsel raised the issue (which he did)., *Strickland*, 466 U.S. at 694.   Thus, Johnson cannot establish prejudice, or an ineffective-assistance-of-counsel claim.   *See id.*   Accordingly, the Court denies Johnson's request for relief under section 2255.

## IV.    Certificate of appealability

For the Court to issue a certificate of appealability, Johnson must make a substantial showing that he suffered the denial of a constitutional right.   *See Cox v. Norris*, 133 F.3d 565,

22

569 (8th Cir. 1997).  A substantial showing means one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings.  *Id.*  But as shown in the discussion above, Johnson has not made such a showing.  Accordingly, the Court declines to issue a certificate of appealability in this case.

## V.    Other filings

Eight months after he filed his section 2255 motion, Johnson filed a Motion for an Evidentiary Hearing and Motion to Appoint Counsel.  Civ. doc. 11.  As discussed above, Johnson has not shown entitlement to an evidentiary hearing.  And because the Court dismisses Johnson's petition, the Court denies as moot Johnson's Motion to Appoint Counsel.

Four months after that, Johnson filed a supplemental brief.  Civ. docs. 12–13.  Neither the Eastern District of Missouri Local Rules nor the Rules Governing Section 2255 Proceedings for the United States District Courts allow Johnson to file a supplemental brief without the Court's leave.  *See, e.g.*, E.D. Mo. L.R. 4.01(C) (providing that a party may file supplemental memoranda "only with leave of Court").  Thus, the Court strikes Johnson's supplemental brief, civ. docs. 12–13.

## VI.    Conclusion

The Court finds that the record conclusively establishes that 28 U.S.C. § 2255 does not entitle Johnson to relief or an evidentiary hearing.  Accordingly, the Court denies Johnson's [1] Motion to Vacate, Set Aside, or Correct Sentence and Johnson's [11] Motion for an Evidentiary Hearing.  The Court denies as moot Johnson's [11] Motion for Appointment of Counsel.  The Court strikes Johnson's [12] [13] supplemental brief.  A separate judgment accompanies this Memorandum and Order.

So ordered this 22nd day of May 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE